## Case No. 8,083.

### Ex parte LAPSLEY.

[1 Pa. Law J. 245.] [1]

District Court, E. D. Pennsylvania. Oct. 5, 1842.

BANKRUPTCY—PROOF OF DEBT BY CREDITOR HOLD-
ING SECURITY—MISTAKE AS TO EFFECT OF
PROVING—PROOF WITHDRAWN.

A creditor holding security proved his debt before the commissioners; and it appearing that he had done this under a misapprehension of the effect of such an act, and the circumstances of the case being special, the court, after notice had been given to the bankrupt and to the assignee to show cause to the contrary, allowed the proof to be withdrawn.

Harwood had been decreed a bankrupt, and, on the 17th of May, Lapsley, one of his creditors, appeared before the commissioner, in pursuance of the usual notice, which had been sent to him, and proved his debt in ordinary form. The proof alleged, as usual, that "he held no security," "save"— it was added in MS.—certain railroad stocks (which were specified). Some time after this, Lapsley was casually informed, that by having made this proof, he had, perhaps, lost his right to retain the securities.[2] And now (Sept. 17th) Mr. Graham asked for a rule to show cause why the proof of debt should not be withdrawn. He read an affidavit by Lapsley, who stated, that "it never was his intention to relinquish the securities or any of them; and that he had proved his debt, because he received a notice from the commissioner, and supposed it to be necessary and proper for him to do so; but without the most distant idea, that by so doing he would, in the slightest degree, affect his rights in the collateral securities aforesaid."

THE COURT granted the rule, ordering at the same time, that notice of the rule should be given to the assignee, and to the bankrupt.

On the return of the rule, no proof was given that any property had passed by the decree. The amount of Lapsley's debt was $9,300. No evidence was given of the value of this security.[3]

---

[1] [This case is from the Pennsylvania Law Journal, containing the reports of the decisions in bankruptcy of District Judge Randall, by John William Wallace, Esq.]

[2] Section 5: "And no creditor or other person, coming in and proving his debt or other claim, shall be allowed to maintain any suit at law or in equity therefor, but shall be deemed thereby to have waived all right of action and suit against such bankrupt; and all proceedings already commenced, and all unsatisfied judgments already obtained thereon, shall be deemed to be surrendered thereby."

[3] The security consisted of 200 shares of the Harrisburg & Lancaster R. R., and 40 shares of the Cumberland Valley R. R. The reporter has been, since, informed by a respectable broker, that neither stock has a market value; but, that if forced to sale, the former is worth about $5 per share; the latter about $10 per share. This estimate would make the whole security worth $1,600. But the holders of these stocks rate them more highly.

THE COURT expressing an inclination to hear the question argued, Mr. Graham, for Lapsley, said, that the case was, evidently, one of pure mistake the result of ignorance. Lapsley had received an official notice from a person apparently clothed with authority in the whole matter, notifying him, that this court had "ordered (him), as one of the commissioners of the said court, to take proof of the debts due by the said bankrupt to his creditors," and fixing certain days, and a place "for taking proof of all claims against the said bankrupt." On receiving such a note, Lapsley went to the commissioner's office, as of course. It was clear that Lapsley had not meant to surrender his securities, for he expressly reserved them. The commissioner ought to have informed him of the danger which was incurred by proving the debt. The practice in bankruptcy, was, as yet, novel to us; and the court would not allow a creditor to incur a loss of his securities, through the inexperience of the commissioner, and where it was obvious that the creditor's object was to preserve them. There is no evidence that any property has passed by the decree; and it cannot be inferred that the proof before the commissioner was made for the purpose of speculation, or that the present application arises from a disappointment. There is no rule that a security is inevitably surrendered by proof. Thus, it is said in Archbold on Bankruptcy (5th Ed. p. 112), that where the commissioner received proof of the debt, "without discovering that (the creditor) had such a security, the lord chancellor afterwards, upon petition, would order the proof to be expunged. See Ex parte Hossack, Buck, 390." The court, undoubtedly, must have a power to prevent injustice, and hence, says Archbold (page 112) "under special circumstances, a creditor was permitted to prove his debt, and also to proceed on a bond which was pledged as a security for the debt. Ex parte Smith, 2 Glyn & J. 105." See, also, Ex parte Hopley, 2 Jac. & W. p. 220.

P. P. Morris, for another creditor, and J. A. Phillips, for assignee, contended that the language of the act was clear. Lapsley had proved his debt, and had had all the advantages of a proving creditor. He could not now retract. Other creditors may have proved, and have surrendered securities in the belief that Lapsley's would form a general fund. Four months had elapsed between the date of the proof, and that of this application. The precedent would be dangerous; it would allow a creditor to make proof, and then, if he found less advantage in coming on the general fund, than by adhering to his securities—to withdraw his proof. See Ex parte Downes, 18 Ves. 290, where a withdrawal was refused. "It has been a practice long established in bankruptcy," says Eden (page 104), "not to suffer a creditor holding a security to prove

unless he will give up his security." The aim of the act was equality. It did not, to be sure, defeat vested rights, but preferences were at variance with its policy. The court would be animated by the same spirit. It would not assist a creditor in recovering a preference which he had lost through neglect. The general creditors had got an advantage, fairly. Would the court, now, take away from them property to which they had acquired in some sort a vested right?

It was replied that in the case Ex parte Downes [supra] the mortgagee had knowingly surrendered his security, which was "afterwards sold by the assignees, for a much larger sum" than he had valued it at; and that it was only in such a case—one where the creditor had elected to come on the general fund, and had "had the benefit of his proof"—that permission to retract was refused. The circumstances in Ex parte Downes were strong; and, from the language of the chancellor, it may be inferred that, under other circumstances, a retraxit would have been allowed. Here, as has been said, there was no evidence that the proof had been made upon speculation, or that this application to withdraw, arose from a disappointment. There was no evidence that any property had passed by the decree. Proof of debt could, in no contingency, prove valuable; while, on the other hand, the security which Lapsley already held, was of considerable value. So, as to what was said by Eden (page 104), viz. that a creditor holding security was not suffered to prove, unless he surrendered the security, &c. Had the commissioner, in this case, been familiar with bankruptcy proceedings, he would have refused to let Lapsley prove, except on a surrender of his stock. Had this been done, no mistake would have occurred, for Lapsley would have refused to prove at all. (Cur. Advis. Vult.)

RANDALL, District Judge. The application to withdraw proof of debt is made, I presume, from abundance of caution, for the creditor has not commenced a suit at law or in equity, against the bankrupt; nor obtained a judgment, which would be surrendered by making the proof; and the securities which he holds, are collateral, and independent of the bankrupt's personal liability. In England, a creditor who holds collateral security will not, generally speaking, be allowed to prove his debt, unless the security be surrendered. He may, however, by leave of the court, have the securities sold, or valued, and then prove for the balance of his debt; or if he have proved for the whole debt without reference to his security, the court, on application of the assignee, or other party in interest, will order the proof to be expunged, until the securities have been disposed of. The creditor may then (if there have been no frauds) prove for his balance.

In this case there was no concealment; and there is no allegation of other fraud; nor is it pretended that the creditor elected to surrender his security, and to come in upon the estate for a dividend of the general assets. In Ex parte Downes, relied on by the counsel who opposed this motion, the creditor—supposing his mortgage to be of little value—had voluntarily surrendered it; and did not apply for leave to withdraw his proof of debt, and to have his mortgage restored to him, until by an actual sale its value had been ascertained to be much larger than the dividend which he had received from the general assets.

There is no evidence here that any one was misled by the act of Lapsley, or that, until this application was made, any creditor supposed that he had gained an advantage by the proof which had been made. The act of congress [of 1841 (5 Stat. 440)] gives to the court power to set aside and disallow any debt, on proof that it is founded on fraud or mistake. The proof in this case having been made for the full amount of the creditor's demand, without deducting (as should have been done) the value of the security; and this appearing to have been done through mistake, the creditor has leave to withdraw the proof.